February 9, 1910.

---

## No. 4899.

(Court of Appeal, Parish of Orleans.)

### MAX STEPPACH vs. S. E. WORMS & CO., LTD.

Titche & Rogers for plaintiff and appellant.

Dart & Kernan for defendant and appellee.

ST. PAUL, J.—This is a suit for commissions on goods sold for future delivery but never delivered, defendant having ceased to do business before the time for delivery had arrived. The commissions are claimed under a contract the substance of which is that plaintiff was, at his own expense, to travel about the country selling goods for defendants, and was to receive as his sole compensation a commission of 9 per cent. on the gross amount of certain sales. The defendants reserved the right to reject any order sent in, and the purchaser had the privilege of countermanding the order at any time before shipment. No commission was to be due unless the goods were actually shipped.

On April 19, 1907, plaintiff was informed by letter, that, on account of the illness of one of the defendants, they were about to go out of business and his services would not be needed after the 30th of May. He had been

in the country selling goods since the first part of April, and had spent in traveling expenses about $175.00, which amount he had drawn from defendants, who had charged the same against the commissions earned by him on actual shipments.

During this trip he had sold for fall delivery some $4,000 worth of goods on about $3,000 of which he would have received a commission of 9 per cent. when the goods were shipped.

Plaintiff accepted his discharge. He made no claim for commission at the time, but demanded reimbursement of at least part of his traveling expenses, or $120. This was refused; he consulted counsel, and this suit followed.

One of the defenses is substantially that plaintiff's right to commissions never accrued because of defendants two conditions, neither of which ever happened; the first being that the orders had to be accepted and shipped by defendants, the other being that the goods had to be received and accepted by the purchaser.

The last condition may be readily disposed of. When defendants, by going out of business and failing to ship the goods made it impossible for the purchaser to receive and accept them, the condition was at once to be considered as fulfilled. One cannot bind himself to another on a condition, permit the other party to perform his part of the contract and then evade his own obligation by making impossible the condition under which he would be liable.

### C. C., Art. 2040.

Article 2040, Civil Code, must be read in the light of the French text of Article 2035 of the Code of 1825, drawn from Article 1178 of Code Napoleon. This text reads ''bound under condition,'' and not ''bound to perform it'' (the condition) as in the English text, which, on

its face, is mere error in translation. There is no such thing as a party being bound to perform the condition of his own obligation **(C. C. Arts. 2022 et seq.)**; an obligation with a condition obligatory on the party to be bound would be absolute at once.

> In this connection see **Walls vs. Smith, 3 La. 449-501.**

As to the other condition, defendants contend that, having the right to reject any order, they had the right to reject them all. This is based on the assumption that it was within the contemplation of the parties to this contract that shipping of the goods, when the time for shipment arrived, was to depend purely on defendants' sole will and pleasure and not on any exercise of judgment by separately approving or rejecting each particular order.

This assumption is, in our opinion, wholly erroneous. Whilst it is true that, in general, the law will not intervene to protect a party against the consequences of his own contract no matter how erroneous, there are, however, some contracts so unreasonable that the law does not allow them to stand as contracts at all. The contract under consideration, if taken in the sense contended for by defendant, is of that class. Any contract in which one of the parties is to be bound only on a condition, which for its happening depends solely upon the exercise of his own will, is null and void from the beginning.

> **C. C., Arts. 2024-2034; Consumers' Ice Co. vs. Trautman, 45 An. 777.**

On the other hand, a conclusion reached in good faith by an exercise of judgment on a particular matter may be erroneous; but correct or incorrect, it is not dependent solely on one's own will or pleasure. Hence, a con-

tract with a condition which depends on a **bona fide** exercise of judgment by one of the parties about some of the particulars, is not open to the objection that it depends on an event which it is within the power of that party to prevent. Nor will it be affected by the fact that such party can arbitrarily refuse to exercise his judgment thereon; the "power to hinder," within the meaning of **C. C., Art. 2024**, means the **lawful** power and right under the spirit as well as the letter of the contract.

If the event be hindered contrary to the spirit of the contract, the liability ensues forthwith. Thus, where a party's liability under a contract depended on the result of a lawsuit, which it was within his power to prevent by compromising the suit, he was none the less held liable when he did so.

### Rightor vs. Aleman, 4 Rob. 45.

So that under one interpretation the contract under consideration is void, and under another it is valid; but it is elementary that when a contract is capable of two interpretations, one of which will save it, and the other condemn it, that interpretation must prevail which will save the contract.

We are, therefore, of opinion that the parties to this contract, contemplated that the shipping of the goods should depend on a **bona fide** exercise of judgment by defendants, on each individual shipment, when the time for shipment arrived, and not on the mere pleasure and caprice of the defendants.

And when the defendants by going out of business and rejecting the orders in block, declined, refused or made it impossible for them to pass favorable judgment on any of the orders when the time for shipment arrived, they thereby made impossible the only other condition of plaintiff's right under the contract, and as in

**Rightor vs. Aleman,** above mentioned, their obligation to him became absolute at once.

Even, however, if we put aside all technical considerations, and endeavor to seek the true meaning of the parties, the result is the same.

That defendants wished to reserve the right to judge for themselves whether each individual order should or should not be filled, we can readily understand. The solvency of the purchaser; his promptness in meeting payments; whether hard or easy to please; pleasant or disagreeable in his business transactions; the means of transportation and communication; the remedies for enforcing the debt in case of need; and the profit on the sale, all are matters about which any merchant would desire to be informed before shipping his goods. But if plaintiff knew the people to whom he offered to sell the goods, and was careful to see that they would come up to all the requirements of a prudent business man, he had little to fear about any great proportion of his sales being rejected, knowing that defendants were as much, if not more, interested than he in selling their merchandise at a fair profit to safe customers.

All this is reasonable enough. But is it to be supposed that either party contemplated that plaintiff was to support himself and travel at his own expense selling goods for defendants, and that they should be at liberty to reject his orders in block whenever they should see fit, without compensating him or even reimbursing him his actual expenses. We cannot think so.

Of course, defendants were not obligated to continue in business, unless disposed to do so, and no one would pretend that they were, just as in **Rightor vs. Aleman,** the defendant could not be compelled to continue the litigation unless he saw fit to do so, and it is nowhere intimated in the opinion of the Court that he was so

obliged. But his failure to do so, although clearly his privilege, could not prejudice others whose rights depended on the result of the suit. And so in this case, defendants undoubtedly had the right to cease doing business as soon as they chose, but their doing so could not prejudice this plaintiff's right to compensation for the services which he had rendered, or impair any rights which he had under his contract, even though they might as yet be only conditional.

Nor do we attach any importance to the fact that plaintiff at first claimed no commissions on his sales, but simply asked to be reimbursed part of his expenses. He explains this by saying that he thought himself entitled to the commissions, but in view of the pleasant relations he had always had with defendants, he had no desire to claim commissions on transactions out of which defendants were to derive no profit, provided he was reimbursed at least part of his expenses. But even had plaintiff thought that he was not entitled to his commissions, but only to reimbursement of his expenses, it would have been an error of law which could not prejudice him. For of course his only claim, if any, was for commissions, and not for his expenses, which, under the contract, he was to bear himself.

On the contrary, if we are to attach any importance to the acts of the parties at the time, they appear to be against the theory that plaintiff's services were to remain without compensation, and his travels to be at his own expense. Otherwise the warning of **forty days** in his letter of dismissal would appear to have a touch of irony about it, whilst the demand (in a postscript) for an account of his expenses would look like a studied bit of pleasantry.

It is also contended that plaintiff accepted the sum of $42.71 in full settlement of all his claims against defendant, and a check for that amount dated June 1st, and

payable to his order, is produced. Across the face of this check is written: "In full settlement to date." But plaintiff denies that this settlement had any connection whatever with the matter of this claim. It was, in fact, a full settlement of all other matters, and the amount thereof never was in dispute at any time.

Plaintiff claims, that at that time the justice of his demand, for reimbursement of part of his expenses, had been admitted by one of the parties defendant, and awaited only the approval of the other party. This is denied by the party who is said to have admitted the claim, but the burden of proof as to a settlement, rested on the defendants, and neither the treasurer of the company, who drew the check, nor the bookkeeper, who made up the account, were called as witnesses, though both appear to have been present at the time of the alleged settlement. Moreover, there is not the slightest effort to contradict the testimony of plaintiff, that even after the receipt of this check he continued to demand a settlement, verbally and by letter; and there is no pretense that he was ever reminded of the fact that he had been settled with in full.

We are of opinion that plaintiff is entitled to recover his commission on sales aggregating about $3,000.

For the reasons assigned, it is ordered that the judgment appealed from be annulled, avoided and reversed, and it is now ordered that there be judgment in favor of plaintiff and appellant, Max Steppach, and against the defendants and appellees, S. E. Worms & Co., Ltd., in liquidation, S. E. Worms and Morris Wolf, individually, **in solido**, for the full sum of two hundred and seventy dollars with legal interest from judicial demand and the costs of both courts.

Dufour, J., dissents.

February 9, 1910.

Rehearing refused February 21, 1910.